Filed 6/27/22

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LG CHEM, LTD., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN DIEGO COUNTY, <br><br> Respondent; <br><br><br> RYAN LAWHON, <br><br> Real Party in Interest. | D079718 <br><br> (San Diego County <br> Super. Ct. No. 37-2019-00047411-CU-PO-CTL) |

ORIGINAL PROCEEDING in mandate.  Timothy Taylor, Judge.
Petition granted.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller and Wendy S. Dowse
for Petitioner.

No appearance for Respondent.

Singleton Schreiber McKenzie & Scott, Singleton Schreiber, J. Domenic
Martini, Benjamin I. Siminou and Harini P. Raghupathi for Real Party in
Interest.

INTRODUCTION

Ryan Lawhon, a California resident, alleged he was severely injured when an 18650 lithium-ion battery he bought from a San Diego vape shop suddenly exploded in his pants pocket. In addition to the vape shop and vape distributor, he sued LG Chem Ltd. (LG Chem), the South Korean manufacturer of 18650 lithium-ion batteries (18650 batteries), for negligence and product liability. The trial court denied LG Chem's motion to quash service of summons for lack of personal jurisdiction, finding the court's exercise of specific jurisdiction over LG Chem comported with federal due process. LG Chem petitioned this court for writ of mandate directing the trial court to vacate its order denying the motion to quash. We issued an order directing real party-in-interest Lawhon to show cause why the relief sought should not be granted. We now grant the petition and direct the trial court to vacate its order denying the motion to quash and enter a new order granting the motion.

The jurisdictional facts are not disputed: LG Chem sold 18650 batteries as industrial component products to original equipment manufacturers and battery packers who sell to original equipment manufacturers. It did not design, manufacture, distribute, advertise or sell the batteries for sale to or use by individual consumers as standalone, replaceable batteries. It had no connection to the vape shop or the vape distributor responsible for selling the defective battery that injured Lawhon. Its activities in California consisted of sales of 18650 batteries to three California companies in the electric vehicle industry for use in electric vehicles. The question presented is whether Lawhon's personal injury claims arise out of or relate to *those* sales. We conclude they do not. Thus, the

2

exercise of jurisdiction over LG Chem in this California lawsuit is not consistent with due process.

FACTUAL AND PROCEDURAL BACKGROUND

I.

*Lawhon's Claims*

Lawhon alleged he purchased an 18650 battery[1] at a San Diego vape shop called Vapin' the 619. The battery did not come in a package. The vape shop "simply placed it in a plastic bag." On February 7, 2019, Lawhon put the battery in his pants pocket, along with another identical battery he previously purchased from the same vape shop and his car keys. One of the batteries "suddenly exploded" in his pocket, severely burning his leg and hand. Lawhon spent "nearly a week" in the hospital, and missed "multiple weeks of work" as a result of his injuries.

On September 9, 2019, Lawhon filed an unverified complaint for damages against four named defendants: Vapin America LLC (Vapin America), a Nevada limited liability corporation with its principal place of business in San Diego County; and It Is What It Is-II, LLC, Morija, LLC, and Flame LLC, three California limited liability corporations with their principal places of business in San Diego County that were in "some combination" doing business as Vapin' the 619. He alleged, on information and belief, that Vapin America sold the battery that injured him to the vape shop.

Lawhon also alleged, on information and belief, there were unknown defendants, Does 1 through 50, who were "in some manner responsible" and

---

1     The parties explain that "18650" refers to the size and shape of the batteries: they are 18 millimeters wide, 65 millimeters long—or approximately 0.7 inches wide and 2.6 inches long—and cylindrical.

legally liable to him because they "design[ed], manufactur[ed], or distribut[ed] the defective product." On December 17, 2020, Lawhon substituted LG Chem for Doe 3 with a form amendment to the complaint. Against all defendants, Lawhon asserted a cause of action for negligence and strict liability causes of action for design defect, manufacturing defect, and failure to warn.

## II.

### *LG Chem's Motion to Quash Service of Summons*

On June 9, 2021, LG Chem specially appeared and moved to quash service of summons for lack of personal jurisdiction. Lawhon was granted leave to conduct jurisdictional discovery. On October 29, Lawhon filed his opposition to the motion to quash. He conceded the trial court could not assert general jurisdiction over LG Chem but argued LG Chem's contacts with California were sufficient to support specific jurisdiction. The trial court agreed with Lawhon and denied LG Chem's motion to quash on November 12. LG Chem filed its petition for writ of mandate on November 22.

We summarize the jurisdictional evidence produced by LG Chem, on which both sides relied, and the relevant proceedings.

A.    *Jurisdictional Evidence*

In support of its motion to quash, LG Chem submitted a declaration from Kiwon Choi, a former LG Chem sales professional responsible for sales of the type of battery that allegedly injured Lawhon. During jurisdictional discovery, LG Chem responded to written discovery and produced Choi to be

4

deposed as its designated representative.[2]  The following jurisdictional facts are derived from these sources.

LG Chem is a South Korean company with headquarters and principal offices in Seoul, South Korea.[3]  It had no office or employees in California, nor was it registered to do business in California.  It did not own or lease real property in this state.  It did not have a registered agent for service of process in California.

---

[2]  LG Chem's responses to jurisdictional discovery were produced pursuant to a stipulated protective order prohibiting dissemination of any trade secret information disclosed in the responses.  To the extent the parties included LG Chem's assertedly protected trade secret information in subsequent filings, the information was redacted from the filed documents and the unredacted documents were lodged conditionally under seal.  In this court, LG Chem moved for an order sealing the unredacted versions of the following trial court submissions on the ground they contain its trade secrets, namely, confidential customer- and product-specific pricing information: Lawhon's unredacted opposition brief, excerpts of the transcript of LG Chem's designated representative, LG Chem records of sales to three California companies, and a spreadsheet summarizing these sales.  On December 22, 2021, we issued an order granting the motion to seal pursuant to California Rules of Court, rules 2.550(d) and 8.46(d)(6).  Accordingly, in this opinion, we do not include the names of LG Chem's California customers, the specific number of batteries sold, or the specific dollar amounts generated from these sales, based on our prior determination that this is confidential trade secret information of LG Chem.

[3]  LG Chem's evidence did not specify the company's legal form of organization (e.g., corporation, limited liability corporation, etc.).  The legal form of a business entity is relevant to the determination of its citizenship. (See, e.g., *BouMatic, LLC v. Idento Operations, BV* (7th Cir. 2014) 759 F.3d 790, 791 [observing that "[c]lassification of a foreign business entity can be difficult"].)  Here, we are not required to determine LG Chem's citizenship, because there is no dispute it is not domiciled in California and is not subject to general jurisdiction in this state.

LG Chem did not conduct business with Vapin America, the entity alleged to have sold the defective battery to Vapin' the 619. It also did not conduct business with Vapin' the 619, the vape shop that allegedly sold the defective battery to Lawhon, or with the three entities doing business as the vape shop. LG Chem did not authorize any of these entities to advertise, distribute, or sell LG Chem's 18650 batteries for use by individual consumers as standalone, replaceable batteries for any purpose. Indeed, LG Chem did not have any licensed dealers or retailers of 18650 batteries in California, nor did it authorize or advertise consumer repair or replacement services for 18650 batteries in this state.

If the 18650 battery that injured Lawhon was, in fact, an LG Chem battery,[4] it was not designed or manufactured in California. LG Chem manufactured 18650 batteries "for use by sophisticated companies in specific applications, such as power tools, where the cells are encased in a battery pack with protective circuitry."[5] The batteries are sold as "industrial component products" and only to original equipment manufacturers or

---

[4] Lawhon filed a declaration of an expert who averred he had examined the batteries possessed by Lawhon on February 7, 2019 "using computed tomography (CT) scan." The expert opined "the impacted batteries" were manufactured by LG Chem. LG Chem asserted that fact had not yet been established, claiming "[c]ounterfeit cells are ubiquitous and determining whether an 18650 cell is an authentic LG Chem cell requires inspection by one of LG Chem's experts," which had not occurred.

[5] LG Chem no longer manufactures or sells 18650 batteries. As of December 1, 2020, LG Energy Solution, Ltd., "a spin-off" of LG Chem, does.

6

battery packers.[6]  LG Chem never sold 18650 batteries to vape shops or vape distributors.  And it did not advertise, market or solicit buyers for its 18650 batteries in California; instead, "the customers seek [LG Chem] out."

LG Chem did not design, manufacture, distribute, advertise, or sell 18650 batteries to be sold to, or used by, individual consumers as standalone, replaceable batteries.  Nor did LG Chem authorize any wholesaler, distributor, retailer, or other individual or entity to do so.

In the two-year period leading up to Lawhon's injury on February 7, 2019, LG Chem's sales of 18650 batteries in California were to three companies in the electric vehicle industry, and the 18650 batteries sold to these customers were for use in electric vehicles.  LG Chem's records pertaining to these sales showed the batteries were shipped directly from LG Chem in South Korea to the three companies in California.  The number of shipments was fewer than 100, although the number of batteries sold, and the dollars generated from these sales, were in the millions.

When a potential customer contacted LG Chem about 18650 batteries, LG Chem would first verify the customer was an original equipment manufacturer or battery packer "because LG Chem only does business with these kinds of companies."  LG Chem and the customer would then "discuss the specifications of the battery cell that the potential customer would need and then . . . look at the appropriate model that would be the best fit for the application that the customer wants to put the battery cells in[.]"

LG Chem would only sell batteries to customers that signed a declaration of commitment stating the customer "will not sell the battery

---

[6]    Battery packers place battery cells into battery packs or battery modules and then sell the battery packs or modules to original equipment manufacturers.

7

cells as loose individual cells and [will] always make sure that the cells are placed in a battery pack or battery module together with the relevant safety devices or the battery cells are put into finished products and sold as such." LG Chem started doing that in 2016, after a person "alleged that a battery cell that he put in his E-cigarette caused him harm and because [LG Chem] wanted to prevent anything like that from ever happening again[.]" LG Chem also added warning labels to the outside of its 18650 batteries.

B.    *Parties' Arguments*

LG Chem argued, as a South Korean company headquartered in Seoul, it is not subject to the general jurisdiction of the California courts because it has no continuous and systematic contacts with California such that it may be considered " 'at home' " there. LG Chem further argued it was not subject to the specific jurisdiction of the California courts because it did not purposefully exploit the California consumer market for standalone batteries. Rather, it only sold 18650 batteries to three California companies in the electric vehicle industry as components for use in electric vehicles. Because it never sold to vape shops or vape distributors, LG Chem asserted that Vapin America could only have acquired an LG Chem 18650 battery through the unilateral actions of third parties. Thus, it argued, Lawhon's claims arise not out of LG Chem's contacts but out of the actions of third parties, with no connection to LG Chem, who sold the standalone batteries to Lawhon.

Lawhon conceded the trial court could not assert general jurisdiction over LG Chem but argued it could assert specific jurisdiction. He argued LG Chem had purposefully availed itself of the benefits and protections of the California forum by selling its 18650 batteries "to certain, specific original equipment manufacturers and battery pack manufacturers in California for the purpose of deriving financial benefit." Lawhon argued his injury arose

8

from or was related to LG Chem's contacts with California, because LG Chem sold batteries "into the California battery market" and he was "was injured by a battery he purchased in California." He asserted considerations of fair play and substantial justice supported the exercise of jurisdiction over LG Chem.

LG Chem, in reply, argued the jurisdictional facts showed it did not serve a California market for standalone consumer batteries, and "trying to prevent the sale of a product to consumers in a forum State is the opposite of purposeful availment." It argued there was no evidence that Lawhon's injuries arose out of or related to its sales of 18650 batteries to three sophisticated electric vehicle customers. It emphasized that considerations of fairness only became relevant if Lawhon carried his threshold burden of establishing minimum contacts, which, in LG Chem's view, he had not.

C.    *Trial Court's Ruling*

Following a hearing, the trial court issued a minute order denying LG Chem's motion to quash. The court ruled Lawhon had established that LG Chem had sufficient contacts with California to support specific jurisdiction. It found LG Chem had "purposefully directed its activities at California during the relevant time period by shipping and selling millions of LG 18650 lithium-ion battery cells in California." The court found Lawhon also established that his claims were related to these activities, reasoning "it is sufficient that LG Chem shipped and sold 18650 lithium-ion batteries in California and one such battery allegedly caused [Lawhon] harm." The burden then shifted to LG Chem to show the exercise of jurisdiction would be unreasonable, but since LG Chem failed to address that showing, the court denied the motion to quash.

9

## DISCUSSION

### I.

### *Standard of Review*

We apply settled standards of review to the trial court's order denying LG Chem's motion to quash. "In reviewing a trial court's determination of jurisdiction, we will not disturb the court's factual determinations 'if supported by substantial evidence.' " (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273 (*Pavlovich*).) "When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449 (*Vons*); *Pavlovich*, at p. 273.) As we have noted, the jurisdictional facts are not disputed as both sides rely on the same jurisdictional evidence produced by LG Chem. We therefore review the trial court's decision de novo.

### II.

### *Specific Jurisdiction*

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." (*Ford Motor Co. v. Montana Eighth Judicial Dist. Court* (2021) 141 S.Ct. 1017, 1024 (*Ford Motor*); accord *Bristol-Myers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1779 (*Bristol-Myers*).) It "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' [Citation.] By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' [citation], the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum

10

assurance as to where that conduct will and will not render them liable to suit.' " (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 471–472 (*Burger King*).)

A California court "may exercise personal jurisdiction on any basis consistent with the Constitutions of California and the United States." (*Pavlovich*, *supra*, 29 Cal.4th at p. 268; see Code Civ. Proc., § 410.10.) "The exercise of jurisdiction over a nonresident defendant comports with these Constitutions 'if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate " 'traditional notions of fair play and substantial justice.' " ' " (*Pavlovich*, at p. 268; *Vons*, *supra*, 14 Cal.4th at p. 444, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) "Under the minimum contacts test, 'an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.' " (*Pavlovich*, at p. 268, quoting *Kulko v. California Superior Court* (1978) 436 U.S. 84, 92 (*Kulko*).)

There are "two kinds of personal jurisdiction:  general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." (*Ford Motor*, *supra*, 141 S.Ct. at p. 1024.)  "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State," over " 'any and all claims' brought against a defendant."  (*Ibid*.) Specific jurisdiction (the only type at issue in this case) "is different" and can be exerted over a defendant only in a particular case.  (*Ibid*.)

As the United States Supreme Court recently explained, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims.  The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' " (*Ford Motor*,

11

*supra*, 141 S.Ct. at p. 1024.) For a state to assert specific jurisdiction, the defendant "must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' [Citation.] The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.' [Citation.] They must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there. [Citation.] Yet even then—because the defendant is not 'at home'—the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims . . . 'must *arise out of or relate to* the defendant's contacts' with the forum." (*Id.* at pp. 1024–1025, italics added.)

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on "the relationship among the defendant, the forum, and the litigation." ' " (*Walden v. Fiore* (2014) 571 U.S. 277, 283–284; accord *Pavlovich, supra*, 29 Cal.4th at p. 269.) A court may exercise specific jurisdiction over a nonresident defendant only if: (1) the defendant has purposefully availed itself of forum benefits; (2) the plaintiff's claims are related to or arise out of the defendant's contacts with the forum state; and (3) the forum state's assertion of personal jurisdiction would comport with fair play and substantial justice. (*Pavlovich, supra*, 29 Cal.4th at p. 269; see *Ford Motor, supra*, 141 S.Ct. at pp. 1024–1025; *Bristol-Meyers, supra*, 137 S.Ct. at p. 1780.)

On a motion to quash the service of summons on jurisdictional grounds, the plaintiff has the initial burden to prove, by a preponderance of the evidence, that the defendant had sufficient minimum contacts with the forum. (*Vons, supra*, 14 Cal.4th at p. 449.) "To meet this burden, a plaintiff must do more than make allegations. A plaintiff must support [his]

12

allegations with 'competent evidence of jurisdictional facts. Allegations in an unverified complaint are insufficient to satisfy this burden of proof.' " (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 393 (*Rivelli*).) "If the plaintiff makes this showing . . . on the first two requirements (i.e., that the defendant has purposefully availed itself of the forum and the plaintiff's claims relate to or arise out of the defendant's forum-related contacts), the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unreasonable." (*Ibid.*)

The specific jurisdictional analysis is "intensely fact-specific." (*Rivelli, supra,* 67 Cal.App.5th at p. 392.) Indeed, both the United States Supreme Court and our high court have cautioned that the " 'minimum contacts' test . . . is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." (*Kulko, supra,* 436 U.S. at p. 92; *Pavlovich, supra,* 29 Cal.4th at p. 268.) "[T]his determination is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.' " (*Kulko*, at p. 92; *Pavlovich*, at p. 268.)

III.

*Purposeful Availment*

Lawhon contends, based on the undisputed evidence of LG Chem's direct sales of 18650 batteries to three California businesses for their use in electric vehicles, that LG Chem purposefully availed itself of the benefits of

13

conducting business in California.[7] LG Chem asserts these transactions do not satisfy the purposeful availment requirement, because the market served by these sales was not a consumer market for standalone, replaceable batteries. On this, we agree with Lawhon.

" 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum." (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.) In a products liability case, like this one, the California Supreme Court has held that a nonresident manufacturer purposefully avails itself of the benefits of California when it takes actions "designed to

---

7     In a footnote of his return brief, Lawhon provides the internet address of a website and informs us that "[f]rom this main website, one can download LG Chem's 44-page Company Profile." Then without explanation or elaboration, he "moves" this court to take judicial notice of the "Profile" pursuant to Evidence Code section 459. It appears from certain arguments in his return brief that he wishes to rely on the contents of this website for its purported jurisdictional significance. We deny the request. First, it fails to comply with any of the requirements in California Rules of Court, rule 8.252, for seeking judicial notice in a reviewing court. (See Cal. Rules of Court, rule 8.252(a)(1) [a separately-filed motion is required to obtain judicial notice by a reviewing court], (2)(A)–(C) [the motion must state why the matter to be noticed is relevant, whether judicial notice was taken by the trial court, and if not, why the matter is subject to judicial notice under Evidence Code sections 451, 452, or 453].) Second, Lawhon fails to appreciate that " '[t]aking judicial notice of a document is not the same as accepting the truth of its contents[.]' " (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.) We may not take judicial notice of the truth of the contents of a website. (See *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 194.) For these reasons, we disregard any alleged facts that rely on the contents of the referenced website in deciding LG Chem's petition for writ of mandate.

consummate a business arrangement in which [it] would profit financially by selling its product for use in California," and both knows and intends that its product will "enter California and . . . be used" in this state. (*Secrest Mach. Corp. v. Superior Court* (1983) 33 Cal.3d 664, 671 (*Secrest*).)

Following *Secrest*, California courts have consistently concluded that a foreign corporation purposefully avails itself of the benefits of the California forum when it knowingly sells and ships its products to California businesses for use in California. (See *Jayone Foods, Inc. v. Aekyung Industrial Co. Ltd.* (2019) 31 Cal.App.5th 543, 556–557 (*Jayone Foods*) [South Korean company that "engaged in a number of direct sales transactions with multiple California distributors of its consumer products" purposefully availed itself of the benefits of doing business in California]; *Luberski, Inc. v. Oleificio F.LLI Amato S.R.L.* (2009) 171 Cal.App.4th 409, 419 [Italian company that sold olive oil to California businesses and delivered it to California "had the expectation that the goods . . . would be utilized in California" and thus "purposefully availed itself of the [California] forum"].) We have little difficulty reaching the same conclusion here based on the undisputed jurisdictional facts. LG Chem sold and shipped millions of its 18650 batteries over the course of two years to three California companies for their use. These sales were substantially remunerative for LG Chem. As in *Secrest* and *Jayone Foods*, LG Chem purposefully availed itself of the benefits of doing business in California.

LG Chem seeks to refute this conclusion by pointing out that the facts of this case, in its view, compare unfavorably to the facts of *Ford Motor*. It argues that its contacts with California were not as pervasive as the contacts that Ford had with Minnesota and Montana. The difficulty with this argument is that *Ford Motor* is a relatedness case, not a purposeful

15

availment case. In *Ford Motor*, Ford conceded purposeful availment, so the Supreme Court was not called to decide whether Ford's contacts with Minnesota or Montana met the requirements of purposeful availment. (See *Ford Motor*, *supra*, 141 S.Ct. at p. 1028.) LG Chem's efforts to distinguish its contacts with California from Ford's contacts with Minnesota and Montana in *Ford Motor* are therefore not meaningful.

Taking a different tack, LG Chem emphasizes that the market served by its sales to California was not a consumer market for standalone, replaceable batteries. It argues the evidence developed in the trial court showed it tried to prevent sales of its 18650 batteries to consumers, and that "trying to prevent the sale of a product to consumers in a forum State is the opposite of purposeful availment." This argument conflates the concepts of purposeful availment and relatedness. (See *Jayone Foods*, *supra*, 31 Cal.App.5th at pp. 557–558 [the connection between a manufacturer's California-directed activities and the claims at issue is a second-prong consideration on relatedness, whereas "the nature and quality of [the manufacturer's] California sales activities may be considered in deciding whether the company purposefully availed itself of the privilege of doing business in the state"].) That LG Chem did not serve a consumer market in California does not dispel the conclusion it knowingly sold and shipped its products to California businesses for their use. By doing so, it purposefully availed itself of the benefits of doing business in California. (*Secrest*, *supra*, 33 Cal.3d at p. 671; *Jayone Foods*, at pp. 556–557.)

Finally, LG Chem, pointing out the absence of any demonstrated connection between its sales of batteries to its California customers on the one hand, and Vapin America, the distributor that allegedly supplied the battery that injured Lawhon, on the other, argues "[t]here is no other way"

16

the defective battery could have made its way to Lawhon except "as the result of unilateral actions of third parties unconnected to LG Chem[.]" Relying on *Burger King*, *supra*, 471 U.S. at page 475, LG Chem argues that a finding of purposeful availment cannot be based on the " 'unilateral activit[ies]' " of such unrelated third parties. As we discuss next, we agree with LG Chem that, under the facts of this case, this evidentiary gap is dispositive, but at the second prong, not the first prong, of the jurisdictional analysis. At this stage, based on the evidence of LG Chem's direct, repeated, and substantially remunerative sales to three California customers, we conclude that it purposefully availed itself of the benefits of the California forum.

IV.

*Relatedness*

The second element of the minimum contacts test requires a connection between the plaintiff's claims and the nonresident defendant's forum activities. "In order for a state court to exercise specific jurisdiction, 'the *suit* must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.' " (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1780, quoting *Burger King*, *supra*, 471 U.S. at pp. 472–473; accord *Ford Motor*, *supra,* 141 S.Ct. at p. 1026.) Stated another way, " 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.' " (*Bristol-Myers*, at p. 1780, quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown* (2011) 564 U.S. 915, 919 (*Goodyear*).) "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." (*Bristol-Myers*, at p. 1781.)

It is Lawhon's burden to prove this second prong of the specific jurisdictional analysis, and he must do that with " 'competent evidence of

17

jurisdictional facts.' " (*Rivelli, supra*, 67 Cal.App.5th at p. 393.) In the trial court, Lawhon sought to dispatch his burden by merely demonstrating that "LG Chem is selling batteries into the California battery market and [he] was injured by a battery he purchased in California." His effort to establish a connection between LG Chem's California activities and his product liability claims ended there. He argued, and the trial court agreed, "[t]hat alone should be sufficient to establish this prong of the [jurisdictional] test."

It is not. As we explain, Lawhon's alleged injury from an 18650 battery purchased at a vape shop, whose supply chain is unknown and unconnected to LG Chem, " 'in no sense arise' " from LG Chem's sales of 18650 batteries to three California companies in the electric vehicle industry for use in electric vehicles. (*Bristol-Myers, supra,* 137 S.Ct. at p. 1779, quoting *Bristol-Myers Squibb Co. v. Superior Court* (2016) 1 Cal.5th 783, 819 (dis. opn. of Werdegar, J.).) Nor has Lawhon established that those sales are "related enough" to his product liability claims to permit the constitutional exercise of jurisdiction over LG Chem, in *this specific suit.* (*Ford Motor, supra*, 141 S.Ct. at p. 1031.)

But, citing *Ford Motor*, Lawhon argues that this is the " 'paradigm case of specific jurisdiction' " because LG Chem " 'serves a market' " for a product in California, "namely, a market for 18650 lithium-ion batteries, 'and the product malfunction[ed] there.' " The Supreme Court did say in *Ford Motor*, that under its precedent, "specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there." (*Ford Motor, supra*, 141 S.Ct. at p. 1027.) However, Lawhon's reliance on this isolated quotation overlooks the chasm that exists between his case and *Ford Motor*.

In *Ford Motor*, a driver of a Ford Explorer was killed in Montana when the tread separated from a rear tire, and a passenger in a Crown Victoria

18

suffered serious brain damage when his airbag failed to deploy in a crash that occurred in Minnesota.  Each plaintiff sued Ford in the forum where the accident occurred, asserting products liability claims.  (*Ford Motor*, *supra*, 141 S.Ct. at p. 1023.)  Ford argued each state's court "had jurisdiction only if the company's conduct in the State had given rise to the plaintiff's claims," and that "causal link" did not exist because Ford did not design, manufacture, or sell in either state "the particular vehicle involved in the accident."  (*Ibid*.)  Ford designed the models in Michigan, manufactured them in Kentucky and Canada, and had originally sold the cars at issue outside the forum States.  It was only through later resales and relocations by consumers that the cars entered Montana and Minnesota.  (*Ibid*.)

The Supreme Court rejected "Ford's causation-only approach" as inconsistent with its own precedent, noting that its "most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.' "  (*Ford Motor*, *supra*, 141 S.Ct. at p. 1026.)  The Court explained that it has "never framed the specific jurisdiction inquiry as *always* requiring proof of causation—*i.e.,* proof that the plaintiff's claim came about because of the defendant's in-state conduct." (*Ibid*., italics added.)  Rather, "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that *some* relationships will support jurisdiction without a causal showing."  (*Ibid*., italics added.)  The high court then found that Ford's was *one* of those relationships that supported jurisdiction without a causal showing.  (*Ibid*.)

"To see why Ford is subject to jurisdiction," the Supreme Court first considered "the business that the company regularly conducts in Montana and Minnesota."  (*Ford Motor, supra*, 141 S.Ct. at p. 1028.)  "By every means imaginable—among them, billboards, TV and radio spots, print ads, and

direct mail—Ford urges Montanans and Minnesotans to buy its vehicles," including the models involved in the accidents. (*Ibid.*) Ford also "encourage[s]" and "fosters an active resale market for its old models." (*Id.* at pp. 1028, 1029.) Not only did Ford offer those models for sale, "new or used, [at dealerships] throughout the States," it also "work[ed] hard to foster ongoing connections to its cars' owners" by regularly maintaining and repairing them at its local dealerships and distributing replacement parts through dealerships and auto shops in each state. (*Ibid.*) Through its "veritable truckload of contacts" (*id.* at p. 1031), Ford had "encourage[d] Montanans and Minnesotans to become lifelong Ford drivers" (*id.* at p. 1028).

Based on those in-state activities, the Supreme Court concluded Ford had "*systematically* served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." (*Ford Motor*, *supra*, 141 S.Ct. at p. 1028, italics added.) It is in this context, which Lawhon omits, that the Supreme Court said "specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there." (*Id.* at p. 1027.)

Moreover, although the majority in *Ford Motor* was clear there is not "always" a requirement of a "strict causal relationship between the defendant's in-state activity and the litigation" (*Ford Motor*, *supra*, 141 S.Ct. at p. 1026), in response to a contention made by Ford, it went on to suggest that a causal link *might* be found in the case. Ford asserted that since it was consumers who later sold the cars at issue to the States' residents, the plaintiffs' claims would be "just the same" without Ford's contacts with

Montana or Minnesota. (*Id.* at p. 1029.) Addressing this contention, the majority found "that assumption is far from clear. For the owners of these cars might never have bought them, and so these suits might never have arisen, except for Ford's contacts with their home States." (*Ibid.*) The majority observed that the consumer may purchase the car because of Ford's extensive advertisement, in-state activities "designed to make driving a Ford convenient there"—such as, servicing Ford cars, providing parts—and because "Ford fosters an active resale market for its old models." (*Ibid.*) In other words, Ford, by its in-state *conduct*, had fostered the very sort of consumer behavior that undergirded each plaintiff's claim. (See *ibid.*)

We disagree that *Ford Motor* is anything like the case before us. The undisputed facts establish that LG Chem did not advertise, market or solicit buyers—original equipment manufacturers *or* individual consumers—for its 18650 batteries. The business LG Chem regularly conducted in California consisted of sales of 18650 batteries as industrial component parts to three companies in the electric vehicle industry, for use in electric vehicles. More to the point, unlike the Minnesota and Montana markets served by Ford, the market served by LG Chem's California sales was *not* a consumer market. As such, LG Chem did nothing in California to "urge[ ]," "foster[ ]," or "encourage[ ]" California consumers like Lawhon to buy, or use, individual 18650 batteries as standalone replacements in consumer products. (See *Ford Motor*, *supra*, 141 S.Ct. at pp. 1023, 1028, 1029, 1031.) Quite the opposite. LG Chem took steps to prevent precisely Lawhon's consumer behavior by placing warning labels on its 18650 batteries and requiring its business customers to sign declarations of commitment promising not to resell its batteries to individual consumers. Thus, unlike *Ford Motor*, it cannot be said (nor is it even alleged) that LG Chem cultivated and "systematically served a

21

market" for consumer purchase or use of its 18650 batteries as standalone replacements. (*Ford Motor, supra*, 141 S.Ct. at p. 1028.)

Under *Ford Motor*, it is not enough to satisfy the second prong of the jurisdictional analysis to simply demonstrate that a company " 'serves *a* market' " for a product in California " 'and the product malfunction[ed] there,' " as Lawhon asserts. (Italics added.) "Serves *a* market" does not mean "serves *any* market." Although under *Ford Motor* specific jurisdiction can attach on a lesser, " 'relate to' " showing, the majority cautioned, "[t]hat does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." (*Ford Motor, supra*, 141 S.Ct. at p. 1026.) Lawhon, by ignoring the context of the *Ford Motor* quotation he relies on, seeks to lower the bar on the relatedness test, turning it into an "anything goes" approach to specific jurisdiction.

Essentially, Lawhon contends that specific jurisdiction can be exerted over LG Chem wherever it sold its 18650 batteries, even if, as here, it deliberately limited its sales to a narrow range of businesses and tailored these transactions to avoid a consumer market. Under his contention, there would potentially be personal jurisdiction over a company in a consumer's product liability claim in any jurisdiction that is part of the product's distribution chain. That goes too far. "[T]he foreseeability that is critical to [a] due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (*World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297 (*World-Wide Volkswagen)*; *Ford Motor, supra*, 141 S.Ct. at p. 1025 [the minimum contacts "doctrine . . . provides

22

defendants with 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign' "].)

Here, the undisputed facts show LG Chem deliberately structured its transactions to prevent 18650 batteries from being used by individual California consumers, like Lawhon, as standalone replacement batteries. "The Due Process Clause . . . 'gives a degree of predictability to the legal system that allows [LG Chem] to structure [its] primary conduct with some minimum assurance as to where *that conduct* will and will not render [it] liable to suit." (*Burger King*, *supra*, 471 U.S. at pp. 471–472, italics added.) On this record, Lawhon fails to establish that LG Chem's contacts with California gave it fair warning of the possibility of being sued in California by an individual consumer claiming injury from a loose 18650 battery purchased in a vape shop.[8]

Lawhon contends it does not matter that LG Chem's sales are only to "authorized businesses" for use as industrial component parts in electric vehicles and that he purchased a loose battery "outside [LG Chem's] distribution process," or that LG Chem "has no idea how these batteries end

---

[8] Lawhon contends that LG Chem has previously appeared as a defendant in 18 lawsuits in California involving claims of personal injury from 18650 batteries, but he does not develop this point further. The relevance of this contention is not clear. If it is being suggested that the existence of these other lawsuits gave LG Chem fair warning of the possibility of being sued in California for personal injury claims like Lawhon's, we disagree. (See *Burger King*, *supra*, 471 U.S. at p. 474 ["Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the [United States Supreme] Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction."], quoting *World-Wide Volkswagen*, *supra*, 444 U.S. at p. 295.)

23

up in California vape shops for resale." Because under his reading of *Ford Motor*, "a plaintiff need not prove there is a causal connection between their injuries and a defendant's in-state conduct." In his words, he "need not prove that his battery left an LG Chem manufacturing plant in Korea, jumped on a freightliner, arrived in a California port, and was transported to Vapin' the 619." Lawhon's focus on causation misses the mark. Evidence of what happened downstream in the distribution chain once LG Chem shipped its 18650 batteries to its business customers is relevant to whether Lawhon's claims are related to those sales.

On this point, *Bristol-Myers* is instructive. In *Bristol-Myers*, a group of plaintiffs consisting of California residents and residents of other States sued Bristol-Myers Squibb (BMS), alleging the company's drug Plavix had damaged their health. The nonresident plaintiffs did not allege that they obtained Plavix (which was designed and manufactured outside of California) in California or from any other California source or that they were injured by Plavix in California. (*Bristol-Myers*, *supra*, 137 S.Ct. at pp. 1777–1778.) Based on these facts, the United States Supreme Court held specific jurisdiction was lacking because there was no connection between California and the nonresident plaintiffs' specific claims. (*Id*. at p. 1781.) But in what the Court described as "a last ditch contention," the nonresident plaintiffs asserted that BMS's " 'decision to contract with a California company [McKesson] to distribute [Plavix] nationally' provides a sufficient basis for personal jurisdiction." (*Id*. at p. 1783.) The Court rejected that contention, finding "[t]he bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State." (*Ibid*.) It noted that "[i]n this case, it is not alleged that BMS engaged in relevant acts together with McKesson in California. . . . *And the nonresidents 'have*

24

*adduced no evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed it to them.' "* (*Ibid.*, italics added.)

Here, the jurisdictional facts developed by Lawhon suffer from a similar evidentiary gap. Although Lawhon has established that LG Chem sold 18650 batteries to three companies in California, he has " 'adduced no evidence to show how or by whom the [allegedly defective 18650 battery] was distributed to' " the vape industry wholesaler (Vapin America) and retailer (Vapin' the 619) that ultimately sold it to him. (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1783.) Nor does he show that LG Chem "engaged in relevant acts together with" its three California customers. (See *ibid.*) Indeed, Lawhon concedes his evidence showed "that after [LG Chem] sells a[n] 18650 lithium-ion battery to a customer in California, the battery's final destination is no longer within LG Chem[ ]'s control." As in *Bristol-Myers*, the "bare fact" that LG Chem "contracted with" California companies in the electric vehicle industry "is not enough to establish personal jurisdiction in [this] State." (*Ibid.*) That is because, "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim *unrelated to those sales*." (*Goodyear*, *supra*, 564 U.S. at p. 931, fn. 6, italics added; accord *Bristol-Myers*, at p. 1781.)

Yet, the trial court ruled "it [wa]s sufficient that LG Chem shipped and sold 18650 lithium-ion batteries in California and one such battery allegedly caused [Lawhon] harm." The trial court's reliance on LG Chem's sales of 18650 batteries to three California companies for use in electric vehicles looks like the " 'sliding scale approach' " that the Supreme Court rejected in *Bristol-Myers*. (*Bristol-Myers*, *supra*, 137 S.Ct. at p. 1781.) Under that approach, which the high court stated "resembles a loose and spurious form of general

25

jurisdiction," "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." (*Ibid*.) Finding no precedential support for this approach, the Court reiterated: "For specific jurisdiction, a defendant's general connections with the forum are not enough. . . . '[A] corporation's "continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." ' " (*Ibid.*, quoting *Goodyear, supra*, 564 U.S. at p. 927.) Since Lawhon's products liability claims have no demonstrated connection to LG Chem's sales of 18650 batteries in California, specific jurisdiction is lacking.[9]

V.

*Lawhon's Reliance on Other Cases Against LG Chem*

Lawhon warns that if we conclude he has not met his burden of establishing forum-relatedness, we will be out of step with the decisions of "many courts" that have upheld specific jurisdiction over LG Chem in products liability cases involving defective 18650 batteries. He directs our attention to the following four decisions: *Berven v. LG Chem, Ltd.* (E.D. Cal. Apr. 18, 2019, No. 1:18-CV-01542-DAD-EPG) 2019 WL 1746083 (*Berven*), report and recommendation adopted in *Berven v. LG Chem, Ltd.* (E.D. Cal., Sept. 26, 2019, No. 1:18-cv-01542-DAD-EPG), 2019 WL 4687080 (*Berven II)*; *LG Chem, Ltd. v. Lemmerman* (2021) 361 Ga.App. 163 (*Lemmerman*); *Tieszen*

---

9 Because Lawhon has not met his threshold burden of demonstrating facts justifying the exercise of jurisdiction, we need not and do not consider whether the exercise of jurisdiction over LG Chem would comport with fair play and substantial justice. (See *Vons, supra*, 14 Cal.4th at p. 449; accord *Rivelli, supra*, 67 Cal.App.5th at p. 404.)

*v. EBay, Inc.* (D.S.D. Sept. 10, 2021, No. 4:21-CV-04002-KES) 2021 WL 4134352 (*Tieszen*); and *LG Chem America, Inc. v. Morgan* (Tex.App. Dec. 15, 2020, No. 01-19-00665-CV) 2020 WL 7349483 (*Morgan*).[10]

Lawhon contends that, in each of these cases, the courts rejected LG Chem's arguments that because it sold its 18650 batteries as industrial component parts to original equipment manufacturers, and not as standalone, replaceable batteries to consumers, the required relationship between its forum activities and the plaintiff's claims was missing. In doing so, he contends these courts determined that LG Chem's arguments provided

---

[10] In response to Lawhon's four cases, LG Chem counters with another 14 cases, also involving products liability claims based on injuries from a defective 18650 battery, in which specific jurisdiction over LG Chem was rejected. Like the cases relied on by Lawhon, none of LG Chem's cases are controlling, and LG Chem simply presents them as a string of citations. We therefore do not discuss them in detail. (See *Barbero v. Flawless Vape Wholesale & Distribution Inc.* (N.Y., Feb. 27, 2020, No. 901523-19) 2020 N.Y. Misc. LEXIS 10417; *Death v. Mabry* (W.D.Wash., Dec. 13, 2018, No. C18-5444 RBL) 2018 U.S. Dist. LEXIS 210497; *Eriksen v. ECX, LLC* (Wash.App., Nov. 2, 2020, No. 79473-6-I) 2020 Wash. App. LEXIS 2839; *LG Chem, Ltd. v. Granger* (Tex.App., May 27, 2021, No. 14-19-00814-CV) 2021 Tex.App. LEXIS 4203; *State ex rel. LG Chem, Ltd. v. McLaughlin* (Mo. 2020) 599 S.W.3d 899; *LG Chem, Ltd. v. Turner* (Tex.App., May 27, 2021, No. 14-19-00326-CV) 2021 Tex. App. LEXIS 4200; *Macias v. LG Chem* (C.D.Cal., May 7, 2021, No. SA CV 20-02416-DOC-(ADSx)) 2021 U.S. Dist. LEXIS 134407; *Miller v. LG Chem, Ltd.* (N.C.App., Feb. 1, 2022, No. COA20-687) 2022-NCCOA-55; *Payrovi v. LG Chem America, Inc.* (N.D.Cal. 2020) 491 F.Supp.3d 597; *Reyes v. Freedom Smokes, Inc.* (N.D.Ohio, Apr. 6, 2020, No. 5:19-cv-2695) 2020 U.S. Dist. LEXIS 59772; *Richter v. LG Chem, Ltd.* (N.D.Ill., Oct. 2, 2020, No.18-CV-50360) 2020 U.S. Dist. LEXIS 183091; *Schexnider v. E-Cig Central, LLC* (Tex.Ct.App., Nov. 25, 2020, No. 06-20-00003-CV) 2020 Tex.App. LEXIS 9232; *Walsh v. LG Chem Ltd.* (9th Cir. 2020) 834 F.Appx 310; *Yamashita v. LG Chem, Ltd.* (D.Hawaii, July 31, 2020, No. 20-cv-00129) 2020 U.S. Dist. LEXIS 136825.)

a defense of product misuse to the merits of the products liability action, but not a defense to jurisdiction. We do not find these cases persuasive.

Preliminarily, we observe the cases cited by Lawhon consist of unpublished district court orders (*Berven* and *Tieszen*) and the decisions of a Georgia intermediate appellate court (*Lemmerman*) and Texas intermediate appellate court (*Morgan*). As such, these cases are only authoritative to the extent we find them persuasive. (See *Rohr Aircraft Corp. v. County of San Diego* (1959) 51 Cal.2d 759, 764 ["[T]he decisions of the lower federal courts on federal questions are merely persuasive."], revd. on other grounds (1960) 362 U.S. 628; *Balsam v. Trancos, Inc.* (2012) 203 Cal.App.4th 1083, 1100 ["a nonpublished federal district court case can be citable as persuasive authority"]; *Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070, 1077 ["Decisions of the courts of other states are only regarded as 'persuasive . . . depending on the point involved[.]' "].)

We further observe, as we previously noted, that the specific jurisdictional analysis "is intensely fact-specific" (*Rivelli*, *supra*, 67 Cal.App.5th at p. 392) and "is not susceptible of mechanical application" (*Kulko*, *supra*, 436 U.S. at p. 92; *Pavlovich*, *supra*, 29 Cal.4th at p. 268). In each case cited by Lawhon, the relevant procedure required the court to accept the plaintiff's uncontroverted jurisdictional allegations as true. (See *Berven*, *supra*, 2019 WL 1746083, at p. *7; *Lemmerman*, *supra*, 361 Ga.App. at pp. 168–169; *Tieszen*, *supra*, 2021 WL 4134352, at p. *1; *Morgan*, *supra*, 2020 WL 7349483, at pp. *5–6.) Under California procedure, a plaintiff must present competent evidence of jurisdictional facts and cannot rely on allegations. (*Rivelli*, at p. 393.) The resulting factual scenario considered by each court also materially differed from the jurisdictional facts present here. (See *Berven*, at p. *7; *Berven II, supra,* 2019 WL 4687080, at pp. *2–3 [district

28

court order adopting magistrate court's report of findings and recommendations]; *Lemmerman*, at pp. 164–165; *Tieszen*, *supra*, 2021 WL 4134352, at p. *5; *Morgan*, *supra*, 2020 WL 7349483, at p. *2.)

In *Berven*, for example, the relevant federal procedure required the court to accept as true a number of uncontroverted jurisdictional allegations the plaintiff made on information and belief, and which differ materially from the jurisdictional facts developed in this case. (*Berven*, *supra*, 2019 WL 1746083, at p. *7.) The plaintiff alleged, for example, that LG Chem had engaged in a practice of selling substandard 18650 batteries to distributors throughout the world, with knowledge they would end up in the electronic cigarette market in California. (*Id.* at p. *3.) Moreover, the opinion that Lawhon relies on is a report of findings and recommendations by the magistrate court, not a dispositive ruling. Although the district court adopted the recommendations, it did so upon a de novo review in which it did not rely on or adopt the magistrate court's reasoning, including the reasoning relied on by Lawhon. (See *Berven II*, *supra*, 2019 WL 4687080, at pp. *1–2.)

Similarly, in *Lemmerman*, under Georgia state court procedure, LG Chem, in objecting to the exercise of specific jurisdiction, was required to refute the plaintiff's jurisdictional allegations and establish the "absence of jurisdiction." (*Lemmerman*, *supra*, 361 Ga.App. at p. 163.) In California, that burden is on the plaintiff. (See *Vons*, *supra*, 14 Cal.4th at p. 449.) The plaintiff's complaint included allegations that "LG Chem advertised, marketed, sold, distributed, and placed its 18650 lithium-ion batteries (including the battery at issue . . .) into the stream of commerce in Georgia through the use of wholesalers, distributors, and retailers 'with reasonable expectation that [its products] would be used in this state and which [were] in fact used in this state.' " (*Lemmerman,* at p. 165.) The plaintiff also

29

presented evidence that LG Chem's "lithium-ion batteries were used for a variety of consumer devices such as smartphones and laptops." (*Id.* at p. 166, fn. omitted.) Whether these additional facts would be sufficient to establish specific jurisdiction, they are absent from Lawhon's case.

In affirming the trial court's rejection of LG Chem's challenge to the exercise of specific jurisdiction, the *Lemmerman* court observed the plaintiff's "uncontroverted factual allegations are that LG Chem advertised, marketed, distributed, and placed its 18650 lithium-ion batteries into the Georgia market and did substantial business [t]here." (*Lemmerman, supra,* 361 Ga.App. at pp. 173–174.) It found these allegations met the requirements of *Ford Motor* and established that the plaintiff's "claims and LG Chem's activities in Georgia are sufficiently related so as to be 'close enough to support specific jurisdiction.' " (*Id.* at p. 174, quoting *Ford Motor, supra,* 141 S.Ct. at p. 1032.) Here, it was undisputed that LG Chem did not advertise or market its 18650 lithium batteries in California, to either consumers or business customers.

As this discussion makes clear, the jurisdictional facts that were before the court in *Berven* and *Lemmerman* were different from the facts that Lawhon has presented in this case. *Morgan* and *Tieszen* are similarly distinguishable. (See *Morgan, supra,* 2020 WL 7349483, at p. *8 [denying LG Chem's challenge to personal jurisdiction, in part because the plaintiff's undisputed allegations and evidence showed LG Chem "marketed and shipped . . . 18650 batteries into Texas through a wholly-owned distributor that sold [its] batteries in Texas," and assuming for purposes of its jurisdictional analysis that LG Chem "shipped the actual battery that injured [the plaintiff] to Texas"]; *Tieszen, supra,* 2021 WL 4134352, at p. *6 [denying LG Chem's motion to dismiss for lack of personal jurisdiction based, in part,

30

on plaintiff's allegations that "LG Chem sells and distributes 18650 lithium-ion cell batteries in South Dakota, . . . [plaintiff] purchased such a battery online while in South Dakota, and . . . [plaintiff] was injured by an 18650 lithium-ion cell battery in South Dakota"].)

And to the extent these courts reasoned that LG Chem's argument about the intended purpose of its 18650 batteries was relevant to liability but not jurisdiction, we simply disagree. Because the specific jurisdiction analysis requires an examination of the defendant's case-specific conduct, inevitably some "facts relevant to jurisdiction may also bear on the merits of the complaint." (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 110; see *Regents of University of New Mexico v. Superior Court* (1975) 52 Cal.App.3d 964, 970, fn. 7 ["[W]hen in personam jurisdiction is claimed on the basis of a foreign defendant's alleged forum-related activities in connection with the cause of action pleaded, facts relevant to the question of jurisdiction often bear upon the basic merits of the complaint"].) It is the merits of the *plaintiff's* claims that we do not consider when deciding questions of personal jurisdiction. (See *Regents of University of New Mexico*, at p. 970, fn. 7 [observing that "[s]pecial appearances are not proper occasions for testing the legal or factual merits of a complaint"].) Thus, LG Chem can rely on its theory to support its position that there is a jurisdiction-defeating gap between its forum contacts and Lawhon's injuries, even though the same theory might also support a defense to liability.

For these reasons, the four cases cited by Lawhon are factually and procedurally distinct, and ultimately unpersuasive. It remains our view that Lawhon failed to meet his threshold burden of establishing that the required connection exists between LG Chem's sales of 18650 batteries to three California companies, for use as industrial component parts in electric

vehicles, and his injuries from a standalone 18650 battery purchased at a vape shop.  As a result, the trial court may not exercise personal jurisdiction over LG Chem in this products liability case consistent with the Constitutions of California and the United States.  It erred in denying LG Chem's motion to quash.

## DISPOSITION

The order to show cause is discharged.  Let a writ of mandate issue directing the respondent court to vacate its order denying LG Chem's motion to quash service of summons for lack of personal jurisdiction and enter a new order granting the motion to quash.  LG Chem is entitled to its costs incurred in this writ proceeding.  (Cal. Rules of Court, rule 8.278(a)(1).)


DO, J.


WE CONCUR:



O'ROURKE, Acting P. J.



AARON, J.